IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JEREMIAH THIRING,                           Civ. No. 06-759-AA

      Plaintiff,                           OPINION AND ORDER

   v.

RAY BORDEN, an individual;
BEYOND 6 PRODUCTIONS CORP.,
an Oregon corporation; DAN-AM
COMPANY, a Minnesota corporation
doing business as SATA SPRAY
EQUIPMENT; and SATA
FARBSPRITZTECHNIK GMBH & CO. KG,
a German corporation,

      Defendants.
_____

AIKEN, Judge:

On May 26, 2006, plaintiff filed suit against defendants alleging breach of partnership agreement, breach of contract, conversion, copyright infringement, contributory copyright infringement, and misappropriation of trade secrets. Plaintiff

1   - OPINION AND ORDER

seeks money damages, attorneys fees, and injunctive relief enjoining defendants' allegedly unauthorized use of plaintiff's copyrighted artwork. Defendant SATA Farbspritztechnik GmbH & Co. KG (SATA) moves to dismiss plaintiff's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6).

On May 7, 2007, the court heard oral argument. For the reasons explained below, SATA's motion to dismiss for lack of personal jurisdiction is granted.

## FACTS

Plaintiff Jeremiah Thiring is an artist and Oregon resident. Plaintiff specializes in custom painting and airbrushing and tattoo designs.

Defendant Ray Borden is also an artist who entered into a agreement with plaintiff to form defendant Beyond 6 Productions Corp. (Beyond 6).

Defendant SATA is a German company that manufactures paint spray guns and related equipment used by upscale body repair businesses, automobile manufacturers, and hobbyists. SATA designs its products at its German facilities and sells them to distributors who distribute SATA products worldwide.

Defendant Dan-Am Company dba SATA Spray Equipment (Dan-Am) is a Minnesota corporation with headquarters in Spring Valley, Minnesota. As the exclusive distributor of SATA products in the

2    - OPINION AND ORDER

United States, Dan-Am markets and sells SATA products to retailers throughout the United States.

In July 2003, plaintiff met Borden.  Plaintiff was self-employed as the owner of Custom Creations Airbrush and Design studio in Phoenix, Oregon, and Borden was a representative for a line of paint products.  Borden told plaintiff that he had produced approximately 100 stencil patterns that he wished to market and sell.  Borden represented to plaintiff that he had several contacts within the painting and design industry, and that they could be successful in a joint business venture selling their stencil patterns in the airbrush-accessory market.

Plaintiff and Borden formed Beyond 6 to sell their artwork and related accessories.  They agreed that each of them would produce 50% of the artwork, and that each would share equally in the profits.  Over the next several months, plaintiff claims that he hand-sketched approximately forty detailed design patterns for the purpose of marketing and sale pursuant to his business agreement with Borden.

Sometime prior to December 2003, Borden came to plaintiff's studio with a SATA airbrush and minijet and asked plaintiff to test those products. Plaintiff asserts that Borden said that he had ongoing discussions with SATA regarding those products, and that SATA wanted their feedback on the products.  SATA maintains that no representative ever spoke with Borden about testing SATA products.

3    - OPINION AND ORDER

In early December 2003, plaintiff and Borden traveled together to the annual National Association of Corrosion Engineers (NACE) conference held in Orlando, Florida.  Plaintiff and Borden planned to meet with members of the industrial painting industry to discuss a potential business relationship.  Plaintiff maintains that he spoke with a German engineer from SATA at this conference and provided feedback on the SATA products plaintiff had tested.

Plaintiff alleges that he and Borden met informally with representatives of Dan-Am and SATA several times at the conference, although SATA denies that any representatives met with plaintiff or Borden.  Plaintiff also claims that he and Borden had one formal meeting with the general manager of Dan-Am, Tony Larimer (Larimer), to discuss a business venture.

Plaintiff claims that he provided Larimer with approximately forty of his own hand-drawn template patterns that could be incorporated with SATA products.  Although Borden previously had represented to plaintiff that he had produced 100 original designs, Borden traveled to Florida with none, claiming that they were not yet fit for presentation.  Plaintiff allegedly made clear to Larimer that he was the "sole producer" of the template patterns.  Plaintiff claims that Larimer requested additional artwork and asked plaintiff to create at least one  logo for the SATA booth at the NACE conference.

No formal agreement was reached between Larimer, Borden, and

plaintiff at the conference, because Larimer wanted to view additional templates to be produced by plaintiff and Borden.

Between January 2004 and March 2004, plaintiff created template patterns as requested by Larimer and delivered them, in electronic disk form, to Borden. On January 25, 2004, at Larimer's request, plaintiff sent Larimer fifty books with each book containing all fifty of plaintiff's designs.

After plaintiff delivered the final disk to Borden in or around March 2004, plaintiff continued to ask Borden about the status of the negotiations with Larimer. Plaintiff alleges that Borden told him that Dan-Am or SATA's check, presumably for plaintiff's stencil work, was in the mail. Thereafter, Borden stopped returning plaintiff's phone calls and in March or April 2004, Borden's number was disconnected. Plaintiff never located Borden and had no further communication with him.

In early 2005, plaintiff saw an advertisement for a "Beyond 6 Productions" catalog alongside an advertisement for SATA products in the publication *Paint and Body Shop Supplies*. Plaintiff saw the same advertisement in a 2005 edition of the publication *SATA News*, along with another larger advertisement for the Beyond 6 catalog and website. Plaintiff alleges that the Beyond 6 catalog contains his artwork, and that the Beyond 6 website indicates that the catalog is "Sold at your local SATA dealer" and directs users to contact "SATA Spray Equipment" at a toll-free number and to "Ask

your local SATA dealer" for information.  Finally, plaintiff
alleges that, until June or July 2006, the SATA website contained
a link to the Beyond 6 website and displayed the Beyond 6 catalog.

SATA responds that it has few, if any, contacts with this
forum, and that any business dealings with Borden and Beyond 6,
advertising for the Beyond 6 catalog, and maintaining the SATA-USA
website were actions of Dan-Am as the sole distributor of SATA
products in the United States.  SATA emphasizes that Dan-Am and
SATA are separate, independent, and distinct entities, and that
SATA was not involved in any dealings with plaintiff, Borden, or
Beyond 6.

**DISCUSSION**

SATA first moves for dismissal of plaintiff's claims for lack
of personal jurisdiction.  SATA argues that it has no contacts with
Oregon to support the assertion of either general or specific
jurisdiction, and that any contacts with plaintiff, Borden, or
Beyond 6 were taken by Dan-Am and not SATA.

Determining whether personal jurisdiction exists over an out-
of-state defendant involves two inquiries: whether the forum
state's long-arm statute permits the assertion of jurisdiction and
whether assertion of personal jurisdiction violates federal due
process.  Fed. R. Civ. P. 4(k); Fireman's Fund Ins. Co. v. Nat'l
Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996); Chan v.
Soc'y of Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994).

Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process. Or. R. Civ. P. 4L. Thus, the analysis collapses into a single framework and the court proceeds under federal due process standards.

Due process requires that a defendant, if not present in the state, "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Minimum contacts can be demonstrated through facts supporting either general or specific jurisdiction over the defendant. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Plaintiff bears the burden of establishing personal jurisdiction through a prima facie showing of jurisdictional facts. American Tel. & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). To meet this burden, plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.2d 1122, 1129 (9th Cir. 2003) (internal quotation marks and citation omitted). Unless directly contradicted, the allegations of the complaint are accepted as true, and disputed facts are resolved in plaintiff's favor. Id.

Plaintiff relies on both general and specific jurisdiction to assert personal jurisdiction over SATA.

A.  General Jurisdiction

General jurisdiction refers to the authority of a court to hear any cause of action involving a defendant, regardless of whether the cause of action arose from the defendant's activities within the forum state. Helicopteros, 466 U.S. at 414-15. For general jurisdiction to exist over an out-of-state defendant, the defendant must "engage in continuous and systematic general business contacts that approximate physical presence in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (internal citations and quotation marks omitted); "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Id. Factors relevant to this analysis include whether the defendant "makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a state license, or is incorporated there." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

It is undisputed that SATA's principal place of business is in Germany, and that Dan-Am is the sole distributor of SATA products in the United States. See Declaration of Emily S. Courtnage, Ex. 1, pp. 5-9, Ex. 2; Second Declaration of Albrecht Kruse (Kruse Decl.), ¶¶ 4, 6, 8; Declaration of Knud Jorgensen (Jorgenson

Decl.), ¶¶ 2-5.  SATA has no physical presence within the State of Oregon, is not registered to conduct business in Oregon, and has no registered agents, employees or sales representatives located in Oregon.  SATA does not conduct direct sales of its products in Oregon, and no principals or personnel of SATA have ever traveled to Oregon.  Nevertheless, plaintiff submits four grounds in support of general jurisdiction over SATA.[1]

First, plaintiff alleges that general jurisdiction over SATA is proper, because SATA maintains an "interactive" website.  See Carefirst Of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 399 (4th Cir. 2003); Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418-19 (9th Cir. 1997).  The SATA website includes telephone and facsimile numbers, e-mail addresses, and a "SATA Ware Shop" that enables U.S. customers to purchase SATA promotional merchandise such as t-shirts and baseball caps.  SATA maintains that Dan-Am, rather than SATA, maintains the "USA" portion of the SATA website.  Regardless, it is undisputed that no SATA products can be purchased via the SATA website, except for a few promotional items.  Therefore, the "interactive" nature of the website is not as significant as represented by plaintiff.

Further, plaintiff presents no evidence that the SATA website

---

[1]Plaintiff actually identifies six grounds, but two overlap with other stated grounds.  See Thiring's Response to Motion to Dismiss, p. 5.

facilitates "continuous and systematic" contacts with residents of this forum, or that any Oregon residents interacted specifically with SATA through the SATA website. See Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002) ("The ability of viewers to register domain names on the website does not alter our conclusion, because the website, in this respect, simply enables [the defendants] to do business with Ohio residents, a fact that does not permit general jurisdiction."); see also Schwarzenegger, 374 F.3d at 801; Bancroft & Masters, Inc., 223 F.3d at 1086 (merely "doing business with California" will not support general jurisdiction); Millennium Enterprises, Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 910 (D. Or. 1999).

I am not persuaded by plaintiff's reliance on Mieczkowski v. Masco Corp., 997 F. Supp. 782 (E.D. Tex. 1998). In Mieczkowski, the district court found that defendant's sales of products in the forum through traditional sales methods and its interactive website constituted continuous and systematic contacts with the forum to support the assertion of general jurisdiction in a products liability case. Id. at 787-88. However, the court explicitly declined to decide "whether standing alone the Web site maintained by the defendant is sufficient to satisfy a finding of general jurisdiction." Id. at 788. Moreover, SATA does not directly sell its products in Oregon; Dan-Am and other distributors do. See Affidavit of Kristin L. Olson (Olson Aff.), Ex. 7. Thus, I do not

find that Mieczkowski supports the exercise of general jurisdiction over SATA.

Second, plaintiff relies on SATA's alleged business relationship with Oregon residents plaintiff, Borden, and Beyond 6. However, plaintiff submits no evidence that SATA actually conducted any business with plaintiff, Borden, or Beyond 6. Instead, plaintiff asserts that he, Borden (and presumably Beyond 6) entered into an agreement with Larimer, the general manager of Dan-Am. It is undisputed, however, that SATA and Dan-Am are separate corporate entities. Even if plaintiff's allegations were substantiated, they do not constitute "continuous and systematic" contacts with this forum. See Burger King v. Rudzewicz, 471 U.S. 462, 478-79 (1985) (the mere existence of a contract with forum residents is not sufficient to establish minimum contacts).

Third, plaintiff maintains that SATA targeted Oregon by advertising its products in the trade publications *Paint and Body Shop Supples* and in *SATA News*. SATA argues that Dan-Am is responsible for the publication of these advertisements and cannot establish contacts with Oregon on behalf of SATA. Furthermore, as SATA emphasizes, the advertisements identified by plaintiff clearly represent that the Beyond 6 catalog is distributed "exclusively" by Dan-Am, not SATA. See Affidavit of Jeremiah Thiring, Exs. 2-4. Regardless, advertising in a trade publication of general circulation does not support general jurisdiction. See Nichols v.

11   - OPINION AND ORDER

G.D. Searle & Co., 991 F.2d 1195, 1199-1200 (4th Cir. 1993)
(holding that "advertising and solicitation activities alone do not
constitute the 'minimum contacts' required for general
jurisdiction"); Hamilton v. Accu-Tek, 32 F. Supp. 2d 47, 70 & n.30
(E.D.N.Y. 1998) (explaining that "advertisements placed in national
publications such as trade magazines have been held insufficient to
support" either specific or general jurisdiction). Accordingly, I
decline to exercise general jurisdiction based on print
advertising.

Finally, plaintiff contends that SATA products are sold
throughout the United States, including Oregon. Specifically, in
2003, 2004, 2005 and through the third quarter of 2006, sales of
SATA products in Oregon generated $255,078, $309,754, $287,779 and
$351,992 of revenue, respectively. See Plaintiff's Response to
Motion to Dismiss at p. 10. However, evidence submitted by
plaintiff shows that Dan-Am and/or other distributors and
representatives distributed and sold the products in Oregon, not
SATA. See Olson Aff., Ex. 7. While it may be foreseeable that
SATA's products, once placed in the stream of commerce, may reach
Oregon, it is well-established that foreseeability alone cannot
serve as the constitutional benchmark for personal jurisdiction:

> [T]he foreseeability that is critical to due process
> analysis is not the mere likelihood that a product will
> find its way into the forum state. Rather, it is that
> the defendant's conduct and connection with the forum
> state are such that he should reasonably anticipate being
> haled into court there.

12  - OPINION AND ORDER

<u>Millennium</u>, 33 F. Supp. 2d at 921 (quoting <u>World-Wide Volkswagen</u> <u>Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

In sum, SATA has neither systematic or continuous contacts with this state. <u>See</u> <u>Schwarzenegger</u>, 374 F.3d at 801 (finding that the defendant's regular retention of direct-mail marketing and sales training companies based in California and maintenance of an Internet website accessible by people in California "fall well short of the 'continuous and systematic' contacts that the Supreme Court and this court have held to constitute sufficient 'presence' to warrant general jurisdiction"). Accordingly, I find that plaintiff fails to establish general jurisdiction over SATA.

B.  Specific jurisdiction

Specific jurisdiction applies when the cause of action arises directly from a defendant's contacts with the forum state. <u>See</u> <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (1990). Under the three-part test employed in the Ninth Circuit, specific jurisdiction is established when: 1) the defendant purposefully avails itself of the protections and benefits of the forum state, 2) the cause of action arises out of those contacts, and 3) jurisdiction is constitutionally reasonable. <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995); <u>Roth v. Garcia-Marquez</u>, 942 F.2d 617, 620-21 (9th Cir. 1991). The plaintiff bears the burden of satisfying the first two elements. <u>Schwarzenegger</u>, 374 F.3d at 802. The burden then shifts to the defendant to "present a compelling case" that the

13   - OPINION AND ORDER

exercise of jurisdiction would not be reasonable. <u>Id.</u> (quoting <u>Burger King</u>, 471 U.S. at 477).

Purposeful availment is shown "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." <u>Ballard</u>, 65 F.3d at 1498. A defendant need not have physical contacts within the forum, provided its efforts are "purposefully directed" toward residents of the forum state. <u>Burger King</u>, 471 U.S. at 476. Likewise, jurisdiction may be properly asserted over a defendant who directs tortious conduct toward a resident of the forum state, knowing the effects of the conduct will cause harm. <u>Calder v. Jones</u>, 465 U.S. 783, 789-90 (1984).

Plaintiff again relies on the marketing and sales of SATA products in Oregon to support SATA's purposeful availment of this forum. Plaintiff argues that the "regular" sales and marketing of SATA products cannot be characterized as random, isolated, or fortuitous and that SATA should have anticipated being haled into court here.

However, *Paint and Body Shop Supplies* and *SATA News* are national publications. There is no indication that the sales and advertising of SATA products were purposefully directed at residents of Oregon, any more than residents of any other state. Furthermore, evidence submitted by plaintiff shows that Dan-Am and/or other representatives and distributors sell SATA products in

Oregon, not SATA.  Olson Aff., Ex. 7.  Thus, the marketing and sale
of SATA products by someone other than SATA cannot establish
purposeful availment by SATA.  <u>Burger King</u>, 471 U.S. at 475
("Jurisdiction is proper, however, where the contacts proximately
result from actions by the defendant *himself* that create a
"substantial connection" with the forum State.") (emphasis in
original).  Moreover, plaintiff's claims do not arise from the sale
of SATA products, and no advertisement for SATA products displays
plaintiff's artwork.  Instead, the advertisements submitted by
display the Beyond 6 catalog "offered exclusively by Dan-Am
Company." <u>See</u> Affidavit of Jeremiah Thiring, Ex. 3.

Next, plaintiff argues that SATA purposefully availed itself
of this forum because it entered into a business relationship with
plaintiff, Borden, and Beyond 6.  However, as explained above, the
evidence submitted by plaintiff does not support plaintiff's claim
that SATA entered into business dealings with any of them, and the
existence of a business relationship does not constitute purposeful
availment in any event.  <u>Burger King</u>, 471 U.S. at 478-79.

Finally, plaintiff relies on the SATA website to establish
purposeful availment.  As described above, the SATA website
includes telephone and facsimile numbers and e-mail addresses and
offers promotional items for sale.  The SATA website also includes
links to trade partners, paint manufacturers, painters, and
magazines.  Until June or July of 2006, the SATA website included

15    - OPINION AND ORDER

a link that displayed the Beyond 6 catalog and connected users to the Beyond 6 website.

"No court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state. . . . Rather, in each, there has been 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." Cybersell, 130 F.3d at 418 (emphasis added). "[T]he common thread . . . is that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 419 (citation and quotation marks omitted).

I find that SATA has not engaged in "something more" to establish purposeful availment of this forum. Plaintiff presents no evidence that SATA encouraged people in Oregon to access its website, "consummated transactions," or made deliberate and repeated contacts with Oregon residents through its website. Cybersell, 130 F.3d at 419; Millennium Enterprises, 33 F. Supp. 2d at 921 (declining to assert jurisdiction where defendants took no "action creating 'a substantial connection' with Oregon, or deliberately engaged in 'significant activities' within Oregon, or created 'ongoing obligations' with residents of Oregon" through their website). Thus, SATA has not "performed any act by which it

purposefully availed itself of the privilege of conducting activities" in Oregon. Cybersell, 130 F.3d at 419. The fact that someone who accesses the SATA website can purchase SATA promotional products or could have accessed the Beyond 6 website does not render SATA's actions "purposefully directed" at this forum. Schwarzenegger, 374 F.3d at 803; Millenium Enterprises, 33 F. Supp. 2d at 921. In sum, the SATA website simply is not "conduct and connection" with Oregon such that SATA should "reasonably anticipate being 'haled' into court here." Millenium Enterprises, 33 F. Supp. 2d at 921.

Finally, plaintiff presents no evidence that SATA "intentionally aimed" its conduct at plaintiff knowing that harm would likely occur as a result. See Schwarzenegger, 374 F.3d at 806-07; Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321-22 (9th Cir. 1998); Cybersell, 130 F.3d at 420; Millenium Enterprises, 33 F. Supp. 2d at 922. As an initial matter, it is arguable whether SATA had any involvement in advertising the Beyond 6 catalog or establishing a link to the Beyond 6 website, as plaintiff does not present evidence disputing SATA's assertion that Dan-Am is the sole distributor of SATA products in the United States. Moreover, SATA did not display plaintiff's artwork allegedly contained in the catalog or facilitate sales of plaintiff's artwork or the Beyond 6 catalog. Furthermore, the Beyond 6 catalog advertised makes clear that it is "distributed

17  - OPINION AND ORDER

exclusively" by Dan-Am.  Affidavit of Kristin L. Olson in Support of Plaintiff's Motion for Limited Discovery of Jurisdictional Facts, Ex. 3.

Accordingly, I find that plaintiff fails to establish purposeful availment of this forum by SATA.

Even if plaintiff could satisfy the first two prongs of the specific jurisdiction test, I find that SATA "present[s] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Panavision, 141 F.3d at 1322 (quotation marks and citation omitted).  Factors relevant in determining the reasonableness of jurisdiction include:

> (1) The extent of purposeful interjection into the forum state; (2) The burden on the defendant of defending in the forum; (3) The extent of conflict with the sovereignty of defendant's state; (4) The forum state's interest in adjudicating the dispute; (5) The most efficient judicial resolution of the controversy;(6) The importance of the forum to plaintiff's interest in convenient and effective relief; (7) The existence of an alternative forum.

F.D.I.C. v. British-Am. Ins. Co., 828 F.2d 1439, 1442 (9th Cir. 1987) (citations omitted).

As explained above, SATA has not interjected itself into this forum.  Further, I find the burden on SATA in litigating this case in Oregon would be great, given its status as a foreign corporation and lack of presence in the United States.  Because SATA is a German company, the extent of conflict with the sovereignty of the defendant's forum is unclear.  While Oregon possesses an interest

18    - OPINION AND ORDER

in adjudicating this dispute, and this forum is important to plaintiff's interest in convenient and effective relief, I find that consideration of the above factors, particularly the lack of contacts with this forum, renders the exercise of personal jurisdiction over SATA unreasonable.

**CONCLUSION**

Plaintiff fails to establish that SATA has minimum contacts with Oregon so that the exercise of jurisdiction would "not offend traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316. Accordingly, defendant SATA's Motion to Dismiss for lack of personal jurisdiction (doc. 32) is GRANTED. Plaintiff's claims against SATA are HEREBY DISMISSED. IT IS SO ORDERED.

Dated this  27  day of June, 2007.


_____ /s/ Ann Aiken _____
                         Ann Aiken
                United States District Judge